IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRANCES V. WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| KORY O. PIERCE; PATRICK P. | ) | |
| SORAGHAN; CHARLES J. BARANGO; | ) | |
| RAUL CASALES, JR.; BRIAN A. | ) | |
| BAADER; THOMAS M. O'BRIEN; | ) | |
| MICHAEL N. BAKER; TIMOTHY J. | ) | |
| FARY; JOSEPH M. BYRNE; | ) | |
| WILFREDO ORTIZ; CHARITA M. | ) | |
| EDWARDS; BRIAN J. GUNNELL; | ) | |
| WAYNE A. WIBERG; and JASON M. | ) | |
| TOLIVER; each in his or her | ) | |
| individual capacity, and the CITY | ) | |
| OF CHICAGO, an Illinois municipal | ) | |
| corporation, | ) | |
| | ) | Plaintiff Demands Trial By Jury |
| Defendants. | ) | On All Counts |

COMPLAINT

Count I

(42 U.S.C. §1983—Fourth Amendment—
Failure To Knock And Announce Prior To
Entering Home To Execute Search Warrant)

NOW COMES the Plaintiff, FRANCES V. WASHINGTON, by and through

her attorney, JOANIE RAE WIMMER, and complaining of the Defendants,

KORY O. PIERCE; PATRICK P. SORAGHAN; CHARLES J. BARANGO; RAUL

CASALES, JR.; BRIAN A. BAADER; THOMAS M. O'BRIEN; MICHAEL N.

BAKER; TIMOTHY J. FARY; JOSEPH M. BYRNE; WILFREDO ORTIZ; CHARITA

M. EDWARDS; BRIAN J. GUNNELL; WAYNE A. WIBERG; and JASON M. TOLIVER; each in his or her individual capacity; and the CITY OF CHICAGO, an Illinois municipal corporation, alleges and states as follows:

1.  The Plaintiff, FRANCES V. WASHINGTON, has brought this action to redress the violation of her rights under the Fourth Amendment to the United States Constitution.

2.  Jurisdiction over this action has been conferred upon this Court under 28 U.S.C. §1331 and 42 U.S.C. §1983.

3.  Venue is proper in this Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in the Northern District of Illinois, Eastern Division.

4.  The Plaintiff, FRANCES V. WASHINGTON, is a citizen of the United States, and at all times material to this action, resided on the first floor of a house at 16 E. 117th Place, Chicago, Illinois 60628.

5.  At all times material to this action, Defendants KORY O. PIERCE; PATRICK P. SORAGHAN; CHARLES J. BARANGO; RAUL CASALES, JR.; BRIAN A. BAADER; THOMAS M. O'BRIEN; MICHAEL N. BAKER; TIMOTHY J. FARY; JOSEPH M. BYRNE; WILFREDO ORTIZ; CHARITA M. EDWARDS; BRIAN J. GUNNELL; WAYNE A. WIBERG; and JASON M. TOLIVER were Chicago police officers.

6.  Defendant CITY OF CHICAGO is an Illinois municipal corporation.

7.  The house at 16 E. 117th Place, Chicago, Illinois 60628, consisted of the first floor where the Plaintiff lives, an attic above the Plaintiff's living area,

and a garden apartment on the basement level which can be accessed only from the outside. In the front of the house, there are two doors that lead inside from the outside, one leads into the first floor area where the Plaintiff lives; the other leads into the garden apartment. In the back of the house, there are two doors that lead inside from the outside, one leads into the first floor area where the Plaintiff lives, and the other leads into the garden apartment. There are no other doors that lead from the outside into the house.

8. At all times material to this action the Plaintiff owned the premises at 16 E. 117th Place, Chicago, Illinois 60628.

9. In the month of October, 2014, and for some time prior thereto, the garden apartment was occupied by the Plaintiff's nephew, Lawrence Walker; Walker's then girlfriend, Kiana Payton; and two minor children of Walker and Payton. Walker and Payton were leasing the garden apartment from the Plaintiff.

10. On or about October 21, 2014, a search warrant was issued by Judge Angela M. Petrone of the Circuit Court of Cook County, Illinois. The search warrant directed law enforcement to search the person of Lawrence Walker and "the premises" of "16 E. 117th pl, Chicago, Cook County, Illinois, a single family residence, white in color". The warrant directed law enforcement to seize the following things "One (1) Tec 9 handgun with black finish and any documents showing residency."

11. On or about October 22, 2014, at approximately 8:00 p.m., the Plaintiff was at her home working on her computer when she heard booming

- 3 -

sounds coming from her front door.  Unbeknownst to the Plaintiff, the booming
sounds were caused by the Defendant police officers breaking in the front door.
The Plaintiff, FRANCES V. WASHINGTON, got up from her computer to see
what was happening and began to approach the front door, but before she got
to the front door, people had entered her house with guns drawn and pointed
at her.  At first the Plaintiff did not know who the invaders were.  The Plaintiff
was terrified.  While guns were pointed at her, the people screamed at the
Plaintiff to get on the floor.  At this point, the Plaintiff realized that the people
who had entered her home were police officers.  The Plaintiff got down on the
floor on her knees with her hands up.

12.  The police officers instructed the Plaintiff to look down and not to
look at them.  The Plaintiff complied with that direction.

13.  The Plaintiff was on the floor for approximately a half an hour when
the police told the Plaintiff to get up and sit on the couch.  The Plaintiff got up
and sat on the couch.  She asked the police if she could use her phone.  One of
the police took the Plaintiff's phone from her.

14.  The Plaintiff asked the police what they were looking for.  The police
told the Plaintiff that they would tell her what they were looking for when they
finished.

15.  The police subsequently told the Plaintiff to get up and sit at a table
in the room.  The Plaintiff complied with that direction.

16.  The Plaintiff again asked the police officers what they were looking
for, and she asked the police whether they were supposed to have a search

- 4 -

warrant.  The police replied that they would tell her what they were looking for when they were finished, and that they would give her a copy of the search warrant when they were finished.

17.  The Plaintiff continued to ask the police questions and they told her to shut up.

18.  The police asked the Plaintiff if she had guns in the house, and she replied that she did not.  The police asked the Plaintiff if she had been to jail, and she replied that she had not.

19.  The Plaintiff saw the police go out of her back door and the Plaintiff asked them if they broke in the doors downstairs as well as the front door upstairs.  The police responded that they had gone in the front door and the back door of the garden apartment.  The Plaintiff, who was very concerned for her safety, then asked the police how she could secure her home now that they had broken in the doors, and the police told the Plaintiff that was not their problem.  The Plaintiff asked the police why they did not knock, and she told the police that she would have let them in.  The police responded that they did not have to knock because they had a search warrant.

20.  The police finished searching about two hours after they began.

21.  When the police left, they gave the Plaintiff a copy of the search warrant.  The Plaintiff's front door on the first floor, and the front and back doors of the garden apartment had been broken into.

22.  The police who entered the house did not knock or announce their office, or give the Plaintiff an opportunity to find out who was at the door and

- 5 -

to voluntarily admit them, prior to breaking in the doors and entering the Plaintiff's house.

23. There were no exigent circumstances which would have justified a decision on the part of the police not to knock and announce their office and to give the Plaintiff an opportunity to find out who was at the door and to voluntarily admit them before executing the search warrant.

24. The Plaintiff is informed and does believe that the following individual Defendants entered her house without first knocking and announcing their presence and giving the Plaintiff an opportunity to find out who was at the door and to voluntarily admit them: KORY O. PIERCE; PATRICK P. SORAGHAN; CHARLES J. BARANGO; RAUL CASALES, JR.; BRIAN A. BAADER; THOMAS M. O'BRIEN; MICHAEL N. BAKER; TIMOTHY J. FARY; JOSEPH M. BYRNE; WILFREDO ORTIZ; CHARITA M. EDWARDS; BRIAN J. GUNNELL; WAYNE A. WIBERG; and JASON M. TOLIVER. The conduct of said Defendants in entering the house without first knocking and announcing their office and giving the Plaintiff an opportunity to find out who was at the door and to voluntarily admit them constituted an illegal and unconstitutional entry into the Plaintiff's house in violation of the Fourth Amendment to the United States Constitution.

25. The aforementioned Defendants entered the Plaintiff's house without first knocking and announcing their office and giving the Plaintiff an opportunity to find out who was at the door and to voluntarily admit them either with the intent to deprive the Plaintiff of her rights under the Fourth

Amendment to the United States Constitution, or in reckless disregard of said
rights.

26.  The actions of the Defendants recounted above were undertaken
under color of state law.

27.  The unconstitutional actions of the individual Defendants recounted
above were the result of inadequate training of police officers by Defendant
CITY OF CHICAGO, which inadequate training was the result of one or more
official policy decisions by the City Council of the City of Chicago which failed
to fund and provide adequate training for police officers even after it became
apparent that Chicago police officers were repeatedly guilty of violating the
Fourth Amendment to the United States Constitution and needed more
training.

28.  As a proximate result of the unconstitutional entry into the Plaintiff's
house by the Defendants, the Plaintiff experienced great mental suffering,
including, but not limited to, feelings of extreme fear, feelings that she was
being violated, and feelings of humiliation.  The Plaintiff continues to
experience mental suffering.  In addition, the Plaintiff was required to expend
funds to replace the front door and door frame on the first floor and to board
up the entry ways into the garden apartment.  In addition, as a proximate
result of the unconstitutional entry into her house, the Plaintiff has lost rental
income because she has been unable to rent the garden apartment because the
entry ways into the garden apartment have been boarded up, and the Plaintiff
has not been able to afford to replace the doors and door frames for the garden

apartment.

WHEREFORE, the Plaintiiff, FRANCES V. WASHINGTON, prays that this Court:

(a)  Award the Plaintiff compensatory damages in an amount to be determined by the jury;

(b)  Award the Plaintiff and assess against the individual Defendants punitive damages in an amount to be determined by the jury;

(c)  Award the Plaintiff her reasonable attorney's fees pursuant to 42 U.S.C. §1988;

(d)  Award the Plaintiff her costs pursuant to Fed.R.Civ.P. 54; and

(e)  Grant the Plaintiff such other and further relief as the nature of the case may allow.

## Count II

(42 U.S.C. §1983—Fourth Amendment—Excessive Force)

NOW COMES the Plaintiff, FRANCES V. WASHINGTON, by and through her attorney, JOANIE RAE WIMMER, and complaining of the Defendants, KORY O. PIERCE; PATRICK P. SORAGHAN; CHARLES J. BARANGO; RAUL CASALES, JR.; BRIAN A. BAADER; THOMAS M. O'BRIEN; MICHAEL N. BAKER; TIMOTHY J. FARY; JOSEPH M. BYRNE; WILFREDO ORTIZ; CHARITA M. EDWARDS; BRIAN J. GUNNELL; WAYNE A. WIBERG; and JASON M. TOLIVER; each in his or her individual capacity, and the CITY OF CHICAGO, an Illinois municipal corporation, alleges and states as follows:

1.  The Plaintiff, FRANCES V. WASHINGTON, has brought this action to

redress the violation of her rights under the Fourth Amendment to the United States Constitution.

2.  Jurisdiction over this action has been conferred upon this Court under 28 U.S.C. §1331 and 42 U.S.C. §1983.

3.  Venue is proper in this Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in the Northern District of Illinois, Eastern Division.

4.  The Plaintiff, FRANCES V. WASHINGTON, is a citizen of the United States, and at all times material to this action, resided on the first floor of a house at 16 E. 117th Place, Chicago, Illinois 60628.

5.  At all times material to this action, Defendants KORY O. PIERCE; PATRICK P. SORAGHAN; CHARLES J. BARANGO; RAUL CASALES, JR.; BRIAN A. BAADER; THOMAS M. O'BRIEN; MICHAEL N. BAKER; TIMOTHY J. FARY; JOSEPH M. BYRNE; WILFREDO ORTIZ; CHARITA M. EDWARDS; BRIAN J. GUNNELL; WAYNE A. WIBERG; and JASON M. TOLIVER were Chicago police officers.

6.  Defendant CITY OF CHICAGO is an Illinois municipal corporation.

7.  The house at 16 E. 117th Place, Chicago, Illinois 60628, consisted of the first floor where the Plaintiff lives, an attic above the Plaintiff's living area, and a garden apartment on the basement level which can be accessed only from the outside. In the front of the house, there are two doors that lead inside from the outside, one leads into the first floor area where the Plaintiff lives; the other leads into the garden apartment. In the back of the house, there are two

doors that lead inside from the outside, one leads into the first floor area where the Plaintiff lives, and the other leads into the garden apartment.  There are no other doors that lead from the outside into the house.

8.  At all times material to this action the Plaintiff owned the premises at 16 E. 117th Place, Chicago, Illinois  60628.

9.  In the month of October, 2014, and for some time prior thereto, the garden apartment was occupied by the Plaintiff's nephew, Lawrence Walker; Walker's then girlfriend, Kiana Payton; and two minor children of Walker and Payton.  Walker and Payton were leasing the garden apartment from the Plaintiff.

10.  On or about October 21, 2014, a search warrant was issued by Judge Angela M. Petrone of the Circuit Court of Cook County, Illinois.  The search warrant directed law enforcement to search the person of Lawrence Walker and "the premises" of "16 E. 117th pl, Chicago, Cook County, Illinois, a single family residence, white in color".  The warrant directed law enforcement to seize the following things "One (1) Tec 9 handgun with black finish and any documents showing residency."

11.  On or about October 22, 2014, at approximately 8:00 p.m., the Plaintiff was at her home working on her computer when she heard booming sounds coming from her front door.  Unbeknownst to the Plaintiff, the booming sounds were caused by the Defendant police officers breaking in the front door. The Plaintiff, FRANCES V. WASHINGTON, got up from her computer to see what was happening and began to approach the front door, but before she got

to the front door, people had entered her house with guns drawn and pointed at her. At first the Plaintiff did not know who the invaders were. The Plaintiff was terrified. While guns were pointed at her, the people screamed at the Plaintiff to get on the floor. At this point, the Plaintiff realized that the people who had entered her home were police officers. The Plaintiff got down on the floor on her knees with her hands up.

12. The police officers instructed the Plaintiff to look down and not to look at them. The Plaintiff complied with that direction.

13. The Plaintiff was on the floor for approximately a half an hour when the police told the Plaintiff to get up and sit on the couch. The Plaintiff got up and sat on the couch. She asked the police if she could use her phone. One of the police took the Plaintiff's phone from her.

14. The Plaintiff asked the police what they were looking for. The police told the Plaintiff that they would tell her what they were looking for when they finished.

15. The police subsequently told the Plaintiff to get up and sit at a table in the room. The Plaintiff complied with that direction.

16. The Plaintiff again asked the police officers what they were looking for, and she asked the police whether they were supposed to have a search warrant. The police replied that they would tell her what they were looking for when they were finished, and that they would give her a copy of the search warrant when they were finished.

17. The Plaintiff continued to ask the police questions and they told her

to shut up.

18. The police asked the Plaintiff if she had guns in the house, and she replied that she did not. The police asked the Plaintiff if she had been to jail, and she replied that she had not.

19. The Plaintiff saw the police go out of her back door and the Plaintiff asked them if they broke in the doors downstairs as well as the front door upstairs. The police responded that they had gone in the front door and the back door of the garden apartment. The Plaintiff, who was very concerned for her safety, then asked the police how she could secure her home now that they had broken in the doors, and the police told the Plaintiff that was not their problem. The Plaintiff asked the police why they did not knock, and she told the police that she would have let them in. The police responded that they did not have to knock because they had a search warrant.

20. The police finished searching about two hours after they began.

21. When the police left, they gave the Plaintiff a copy of the search warrant. The Plaintiff's front door on the first floor, and the front and back doors of the garden apartment had been broken into.

22. The police who entered the house did not knock or announce their office, or give the Plaintiff an opportunity to find out who was at the door and to voluntarily admit them, prior to breaking in the doors and entering the Plaintiff's house.

23. The conduct of the Defendant police officers in breaking in the Plaintiff's front door without first knocking and announcing their presence and

- 12 -

giving her an opportunity to find out who was at the door and to voluntarily admit them, and, upon entry, in pointing their guns at her, screaming at her to get on the floor, and telling her to look down and not to look at them while they were searching her house amounted to use of force which was excessive and unreasonable under the circumstances and in violation of the Fourth Amendment to the United States Constitution, especially because the Plaintiff had done nothing to suggest that she was anything but a law-abiding citizen, and the Plaintiff had not resisted the police, used force against the police, or threatened to do so.

24. The Plaintiff is informed and does believe that the following individual Defendants are the police officers who did the things amounting to excessive use of force as described above: KORY O. PIERCE; PATRICK P. SORAGHAN; CHARLES J. BARANGO; RAUL CASALES, JR.; BRIAN A. BAADER; THOMAS M. O'BRIEN; MICHAEL N. BAKER; TIMOTHY J. FARY; JOSEPH M. BYRNE; WILFREDO ORTIZ; CHARITA M. EDWARDS; BRIAN J. GUNNELL; WAYNE A. WIBERG; and JASON M. TOLIVER.

25. The aforementioned Defendants used excessive force against the Plaintiff as described above either with the intent to deprive the Plaintiff of her rights under the Fourth Amendment to the United States Constitution, or in reckless disregard of said rights.

26. The actions of the Defendants recounted above were undertaken under color of state law.

27. The unconstitutional actions of the individual Defendants recounted

above were the result of inadequate training of police officers by Defendant CITY OF CHICAGO, which inadequate training was the result of one or more official policy decisions by the City Council of the City of Chicago which failed to fund and provide adequate training for police officers even after it became apparent that Chicago police officers were repeatedly guilty of violating the Fourth Amendment to the United States Constitution and needed more training.

28.  As a proximate result of the excessive and unreasonable use of force against the Plaintiff, the Plaintiff experienced great mental suffering, including, but not limited to, feelings of extreme fear, feelings that she was being violated, and feelings of humiliation.  The Plaintiff continues to experience mental suffering.

WHEREFORE, the Plaintiff, FRANCES V. WASHINGTON, prays that this Court:

(a)  Award the Plaintiff compensatory damages in an amount to be determined by the jury;

(b)  Award the Plaintiff and assess against the individual Defendants punitive damages in an amount to be determined by the jury;

(c)  Award the Plaintiff her reasonable attorney's fees pursuant to 42 U.S.C. §1988;

(d)  Award the Plaintiff her costs pursuant to Fed.R.Civ.P. 54; and

(e)  Grant the Plaintiff such other and further relief as the nature of the case may allow.

- 14 -

JURY DEMAND

The Plaintiff, FRANCES V. WASHINGTON, demands trial by jury on all

counts.

FRANCES V. WASHINGTON


By:    _____/s/ Joanie Rae Wimmer_____
                Attorney for the Plaintiff


JOANIE RAE WIMMER
Attorney at Law
928 Warren Avenue
Downers Grove, Illinois  60515
(630) 810-0005
Attorney No. 3125600